IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, § § § | |
| Plaintiff, § § | Civil Action No. 3:09-CV-1322-D |
| VS. § § | |
| ROBERT J. SCHLEGEL, et al., § § | |
| Defendants. § | |

MEMORANDUM OPINION
AND ORDER

In this suit to recover on two bank loans, the court must decide whether the plaintiff-bank is entitled to summary judgment and whether the defendant-borrowers should be granted leave to amend their answer to assert new affirmative defenses and counterclaims. For the reasons that follow, the court denies the motion for leave to amend and grants the motion for summary judgment.[1]

I

This is an action by plaintiff Wachovia Bank, National Association ("Wachovia") to recover on notes executed by defendants Robert J. Schlegel ("RJS") and Robert K. Schlegel (collectively,

---

[1] The motion is styled as one for "partial" summary judgment because plaintiff is not seeking summary judgment awarding it attorney's fees. Because an attorney's fee award is typically made in response to a post-judgment Fed. R. Civ. P. 54(d) motion, the court will treat the motion as seeking summary judgment as to the entire case.

"the Schlegels").[2] Wachovia is suing to collect on two loans: one for $12 million, made to the Schlegels jointly in October 2006 to finance the purchase of a minor league baseball team (the "baseball loan"); and another for $5 million, made to RJS individually in March 2008 (the "RJS personal loan").[3] The baseball loan note provided that it would mature and become due in April 2007. Through a series of agreements between Wachovia and the Schlegels, however, the due date was extended until March 31, 2009. The RJS personal loan matured on March 4, 2009. Wachovia was unsuccessful in its attempts to collect the principal and interest owed on both of these notes. Wachovia asserts that, as of January 10, 2010, almost $12 million in principal and $137,133.33 in interest ($12,137,132.99 in total) remains due and unpaid on the baseball loan. It contends that more than $4.8 million in principal and $55,959.75 in interest ($4,906,994.91 in total) remains due and unpaid on the RJS personal loan.

Wachovia moves for summary judgment establishing that the

---

[2] In recounting the factual background, the court summarizes the evidence in the light most favorable to the Schlegels as the summary judgment nonmovants and draws all reasonable inferences in their favor. *E.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[3] Wachovia originally sued to recover on a third loan and included the loan in its summary judgment motion. The parties settled their dispute concerning the third loan, and they stipulated to the dismissal of Wachovia's claims regarding that loan.

Schlegels are jointly and severally liable for the amount owed on the baseball loan, and that RJS is personally liable for the amount owed on the RJS personal loan. Wachovia also seeks pre- and post-judgment interest and attorney's fees.

II

Before considering Wachovia's summary judgment motion, the court must decide whether it should allow the Schlegels to amend their answer to add certain defenses and counterclaims. This is a critical threshold decision because the Schlegels oppose Wachovia's summary judgment motion almost entirely on the basis of these newly-asserted theories.

A

The scheduling order in this case set November 20, 2009 as the deadline for a party to file a motion for leave to amend the pleadings. On that date, Wachovia filed, and the court granted, a motion for leave to amend its complaint. The Schlegels filed an amended answer to Wachovia's amended complaint on December 4, 2009, raising the affirmative defenses of laches, waiver, estoppel, and unclean hands.

On January 15, 2010 Wachovia filed its motion for partial summary judgment. Five days later, the Schlegels sought leave to substitute their counsel, which the court granted. On February 16, 2010, one month after Wachovia moved for summary judgment and nearly three months after the deadline for filing a motion for

leave to amend, the Schlegels filed the instant motion for leave to amend their answer. They seek to add affirmative defenses of fraud and prior material breach, and to add counterclaims for fraud, negligent misrepresentation, tortious interference, defamation, extortion, and violations of banking privacy laws. The Schlegels responded to Wachovia's motion for summary judgment on February 26, 2010, relying largely on defenses and counterclaims first raised in the proposed amended answer.

B

When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to amend must first determine whether to modify the scheduling order under the good cause standard of Fed. R. Civ. P. 16(b)(4). *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dallas County Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet the good cause standard, the moving parties must show that, despite their diligence, they could not reasonably have met the scheduling order deadline. *See S&W Enters.*, 315 F.3d at 535. Only if the movants first satisfy the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S&W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.

- 4 -

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movants is insufficient to constitute "good cause." Instead, the movants must show that, despite their diligence, they could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

A court must "more carefully scrutinize a party's attempt to raise new theories . . . by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam). This court has frequently found prejudice when a party seeks leave to amend as a means of staving off an opposing party's motion for summary judgment. *See, e.g., Valcho*, 658 F.Supp.2d at 815 (denying motion for leave to amend after summary judgment motion filed); *Home Depot U.S.A., Inc.*

*v. Nat'l Fire Ins. Co. of Hartford*, 2007 WL 2592353, at *3 (N.D. Tex. Sept. 10, 2007) (Fitzwater, J.) (reaching same conclusion regarding motion to amend to add counterclaim); *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *11 (N.D. Tex. Nov. 21, 2005) (Fitzwater, J.) (same). As the Fifth Circuit has recognized, granting leave to amend in such circumstances "is potentially to undermine the [the non-amending party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended [pleading] . . . . A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending its [pleading]." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting this court's opinion below), *aff'g*, 685 F.Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.).

Here, the Schlegels have not only failed to meet the good cause standard required under Rule 16(b)(4) to obtain modification of the scheduling order, they have not even addressed that standard or the four-part test under which the court assesses whether to amend the scheduling order. Their two-page motion for leave to amend contains only a passing reference to Rule 15(a)(2), but it fails even to mention Rule 16(b)(4). In Wachovia's brief in opposition to the Schlegels' motion to amend, it notes this inadequacy and presents extensive argument to support the premise that the Schlegels cannot meet the four-part test for good cause

under Rule 16(b)(4). Even after Wachovia highlighted this deficiency in the Schlegels' motion, they failed again to address Rule 16(b)(4) in their reply brief, citing only Rule 15(a)(2). When a party files an untimely motion for leave to amend and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone. *See, e.g., EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *1 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.).

Moreover, even had the Schlegels included a discussion of Rule 16(b)(4) and the four-factor test in their motion, the court would likely hold, as it does now, that Wachovia would be prejudiced by allowing the Schlegels to assert new defenses and counterclaims after Wachovia had already filed its summary judgment motion. The Schlegels do not (and cannot) argue that they were unable to seek leave to amend at an earlier time to assert these defenses and counterclaims. Rather, it appears that their motion is nothing more than an effort by the Schlegels' new counsel to help them escape summary judgment. Because the Schlegels have not demonstrated (or even argued) that they meet the good cause standard under Rule 16(b)(4), and because the court holds that Wachovia would be prejudiced by allowing the Schlegels to amend after Wachovia filed its summary judgment motion, the court denies the Schlegels' motion for leave to amend.

III

The court now turns to Wachovia's motion for summary judgment.

A

Wachovia maintains that it is entitled to a summary judgment for the full amount of principal and interest currently unpaid on the baseball note ($12,137,132.99) and personal note ($4,906,994.91), plus pre- and post-judgment interest. The Schlegels do not contest any of the basic facts about the notes on which Wachovia relies to establish its right to recover. They assert, however, that Wachovia's attempts to collect on the loans violate oral promises that Wachovia representatives made when the notes were executed. The Schlegels argue on this basis that their defenses of unclean hands and estoppel preclude Wachovia from enforcing the terms of the notes and obtaining summary judgment.

B

"Suits on promissory notes are particularly suited for disposition by summary judgment." *Fed. Sav. & Loan Ins. Corp. v. Atkinson-Smith Univ. Park Joint Venture*, 729 F. Supp. 1130, 1132 (N.D. Tex. 1989) (Fitzwater, J.) (citing *FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir. 1988) ("Typically, suits on promissory notes provide fit grist for the summary judgment mill.")). Because Wachovia will bear the burden of proof at trial on its claims regarding the two notes, to obtain summary judgment it "must establish 'beyond peradventure all of the

essential elements of the claim[.]'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  The court has noted that the "beyond peradventure" standard is "heavy."  *See, e.g., Valcho*, 658 F.Supp.2d at 807.

Both sides agree that Texas law controls this case. Therefore, to recover against the Schlegels, Wachovia must prove: "(1) the existence of the note in question; (2) that the party sued signed the note; (3) that [Wachovia] is the owner or holder of the note; and (4) that a certain balance is due and owing on the note." *SMS Fin., L.L.C. v. ABCO Homes, Inc.*, 167 F.3d 235, 238 (5th Cir. 1999) (citing *Bean v. Bluebonnet Sav. Bank FSB*, 884 S.W.2d 520, 522 (Tex. App. 1994, no writ)).  Wachovia has presented evidence in support of each element.  The Schlegels do not contest any of these elements *per se*.  Instead, they posit that the loans are not in default, or, alternatively, that certain defenses preclude Wachovia from recovering on the notes.

Because the court has denied the Schlegels' motion for leave to amend, the only issues before the court concern the Schlegels' affirmative defenses of unclean hands and estoppel.  These defenses both arise out of their contention that Wachovia made oral assurances to the Schlegels that defeat Wachovia's right to recover on the notes.  According to the Schlegels, Wachovia agreed that,

even though each loan had a specified maturity date, Wachovia would extend the due dates for the loans virtually indefinitely so long as the Schlegels made interest-only payments.  As represented, this would enable the Schlegels to defer repaying the principal balance until an unspecified future date.  The only summary judgment evidence that the Schlegels cite in support of this assertion is the declaration of RJS, in which he avers that such assurances were made orally by Wachovia employees.  The Schlegels do not point to any language in the notes or any other written evidence, and they do not identify any disputed fact other than those related to the alleged promises.

Based on these alleged oral assurances, the Schlegels maintain, first, that Wachovia is prevented by the doctrine of unclean hands from recovering on the notes.  Although the Schlegels argue that Wachovia is precluded from enforcing notes that they fraudulently induced the Schlegels to execute, they do not cite any evidence or law to support their unclean hands defense.

Likewise, the Schlegels assert that the defense of estoppel applies because they reasonably relied on Wachovia's promise to extend the loans past their stated maturity dates, and Wachovia should have anticipated that the Schlegels would act in reliance on these promises.  They maintain that Wachovia is precluded by its promises from recovering on the notes.

Wachovia responds that the Schlegels have not raised any

question concerning the essential elements of its claim; therefore, the only possible fact question presented by the Schlegels' response relates to Wachovia's alleged oral promises. Wachovia argues that, assuming that such promises were made, the Texas statute of frauds[4] precludes the Schlegels from relying on this evidence to establish its affirmative defenses.[5]

The statute of frauds defines a "loan agreement" to include a promise, commitment, or document "pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money[.]" Tex. Bus. & Com. Code Ann. § 26.02(a)(2)

---

[4]Tex. Bus. & Com. Code Ann. § 26.02 (Vernon 2009):

. . .

(b) A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.

(c) The rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement.

(d) An agreement subject to Subsection (b) of this section may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement.

[5]Wachovia cites the statute of frauds for the principle that an oral promise cannot alter the terms of a written loan agreement.

(Vernon 2009).  Wachovia argues that the statute of frauds prohibits the Schlegels' attempt to modify the terms of the loan agreement by relying on any oral promises made by Wachovia employees.  Wachovia also posits that both notes contain merger clauses that explicitly preclude any reliance on collateral agreements.

The court holds that the Schlegels' defenses of unclean hands and estoppel are insufficient to avoid summary judgment in Wachovia's favor.  Wachovia has demonstrated beyond peradventure—and the Schlegels have not denied—that the notes exist, that the Schlegels signed the notes, that Wachovia is the holder of the notes, and that a certain balance is due under both.  The Schlegels have not demonstrated any reason why the Texas statute of frauds does not preclude the Schlegels from relying on the alleged oral promises to support their affirmative defenses.  The balance of each loan is well above the statute's threshold limit of $50,000.  All of the statements on which the Schlegels' defenses rest occurred either before or contemporaneously with the execution of notes or extensions that establish maturity dates in March 2009.  *See, e.g., Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 553-56 (Tex. App. 2009, pet. dismissed w.o.j.) (citing Texas statute of frauds to reject defense of estoppel based on alleged oral modifications to loan agreement).  For their promissory estoppel defense to survive the statute of frauds, the Schlegels

must adduce evidence that Wachovia made an oral promise to sign a writing extending the loans beyond March 2009 or promised that the statute was satisfied in relation to the new terms. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 29 (Tex. App. 2005, pet. denied) (holding that promissory estoppel failed where there was no evidence that new writing was prepared or that language was agreed upon); *Barnett v. Legacy Bank of Tex.*, 2003 WL 22358578, at *6 (Tex. App. Oct. 16, 2003, pet. denied) (mem. op.) (same). The Schlegels only assert that Wachovia employees promised that the loans would be extended, not that there was a promise *to sign a writing to that effect*. The defense therefore cannot survive the statute of frauds. The merger clause, which is consistent with the statute of frauds, serves as an additional basis for the court not to look beyond the terms of the agreements.

If the Schlegels intend to prove that the loans would be indefinitely extended, they must seek support in the language of the notes themselves. They cannot, as they seek to do, rely on oral representations that are precluded by the statute of frauds. Any assurances that Wachovia made regarding loan extensions are not enforceable unless they are in writing and signed by Wachovia, and the loan agreements cannot be modified by oral discussions between the parties. In deciding Wachovia's summary judgment motion, the court can only look to the terms of the notes, which supersede all

prior bargains. Because the Schlegels do not contest any of the essential elements of Wachovia's claims on the notes, and because their defenses are precluded as a matter of law by the statute of frauds and the language of the loan agreements, the court concludes that Wachovia is entitled to summary judgment establishing its right to recover on the baseball loan and the RJS personal loan.

\* \* \*

The court denies the Schlegels' February 16, 2010 motion for leave to amend pleadings, and it grants Wachovia's January 15, 2010 motion for summary judgment. Wachovia's March 12, 2010 objection to the declaration of RJS is overruled as moot. The court concludes that Wachovia is entitled to recover the sum of $12,137,132.99 on the baseball loan against the Schlegels, jointly and severally, and pre- and post-judgment interest. Wachovia is entitled to recover the sum of $4,906,994.91 on the RJS personal loan against RJS individually, and pre- and post-judgment interest. Wachovia may apply for an award of attorney's fees under the procedure and in accordance with the deadline prescribed by Rule 54(d). The court is filing a judgment in favor of Wachovia today.

**SO ORDERED.**

June 30, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE